IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Frederick Vold,                Case No. 3:07 CV 1509

            Plaintiff,         MEMORANDUM OPINION
                                   AND ORDER

      -vs-
                                   JUDGE JACK ZOUHARY

ARPAC, LP, et al.,

            Defendants.

### INTRODUCTION

This is a product liability case. The matter is before the Court on Defendant ARPAC's Motion for Summary Judgment (Doc. No. 24). Plaintiff filed a Response (Doc. No. 30) and Defendant replied (Doc. No. 33). (Defendant Campbell Soup Company (Campbell), Plaintiff's employer, has been voluntarily dismissed from the case (Doc. No. 21)). The Court has jurisdiction because the diversity and amount in controversy requirements are satisfied. 28 U.S.C. § 1332.

Plaintiff states four counts against Defendant ARPAC arising from its design and manufacture of the ARPAC machine that allegedly caused Plaintiff's injury: (1) intentional tort; (2) negligent failure to warn; (3) defective design or formulation; and (4) breach of warranty. In its Motion for Summary Judgment, Defendant argues it is entitled to judgment as a matter of law as to all product liability claims because Plaintiff assumed the risk that was the direct cause of his injury. Additionally, Defendant argues there is no legal or factual support for the intentional tort claim.

**BACKGROUND**

Plaintiff Frederick Vold began working at Campbell in 1980. For fifteen years, he worked as a label coordinator, which entailed troubleshooting machinery, making minor repairs and adjustments and monitoring efficiency. Plaintiff received safety training and, in particular, Plaintiff was trained on lockout/tagout procedure which requires shutting off power to a moving part of machinery to allow safe access for repair or maintenance.

Plaintiff was one of two label coordinators working on May 5, 2005. The plant was running five lines of product and was getting ready to add a sixth. Plaintiff testifies he was "run ragged" going from line to line to troubleshoot problems and keep up with production demands. Plaintiff was called to resolve a problem with the "W" line which had plastic stuck to the conveyor. The problem occurred in an ARPAC machine which is part of a case packer operation that utilizes a heat tunnel to shrink wrap plastic over cases of product.

When Plaintiff arrived at the W line, cases of product were jammed in the heat tunnel, and the plastic on the product was melting and sticking to the conveyor belt. Plaintiff removed the products and started the belt running again. He then ran the line without product to observe whether the problem was solved. He noticed a buildup of plastic at the discharge end and tried to remove it by kneeling next to the tunnel and knocking the plastic off with the handle of his screwdriver. Plaintiff did not lockout the machine before attempting this maneuver, but rather let the belt continue to run.

As he tried to remove the plastic, Plaintiff's right arm became caught on the belt and was pulled into the conveyor. No guard or barrier blocked the heat tunnel from the conveyor belt. His arm was burned in the heat tunnel. The machine did have a sign warning "BE CAREFUL–KEEP HANDS OUT OF MACHINERY." Another sign read "[CAUTION–HOT SURFACE – DO NOT

2

TOUCH]." An emergency shut-off control, which can be used to stop the conveyor belt, was located six to eight feet away, but was not reachable from Plaintiff's position. Plaintiff called for the label operator to shut off the machine. As a result of the accident, Plaintiff had skin grafts and three fingers were partially amputated. Campbell has since added guards at the bottom of the heat tunnel and replaced the conveyor belt.

In the wake of the accident, Plaintiff received a disciplinary warning for failing to follow the lockout/tagout procedure. He admits that -- he "probably" told a Campbell Safety Director that he had no one to blame but himself (Vold Dep. 177-78); -- he should have shut off the machine before attempting to clear the plastic (Vold Dep. 131); -- and he cannot recall any Campbell manager instructing him to clear the plastic on the conveyor belt while it was still running (Vold Dep. 149). Although he observed other employees on occasion not follow the logout/tagout procedure, there is no evidence Campbell management or ARPAC were notified (Vold Dep. 149).

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id.* When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

**I.     Assumption of the Risk**

Product liability claims against manufacturers are subject to the affirmative defense of assumption of the risk pursuant to Ohio Revised Code § 2307.711.[1] The defense completely bars recovery of damages "if it is determined that the claimant expressly or impliedly assumed a risk and that the express or implied assumption of the risk was a direct and proximate cause of [the] harm." *Id.* This defense applies to Plaintiff's claims for negligent failure to warn, defective design or formulation and breach of warranty. If the Court finds Defendant is entitled to this defense as a matter of law, it need not determine the merits of the *prima facie* case. *See, e.g.*, *Carnes v. Gordon Food Serv.*, 2007-Ohio-2350 (Ohio Ct. App.), at ¶ 84 (holding manufacturer entitled to summary judgment on product liability claim where plaintiff assumed the risk irrespective of strength of *prima facie* case).

It is beyond dispute that Plaintiff assumed a risk that proximately caused his injury. Plaintiff instead focuses on establishing an exception to the defense: namely, that Plaintiff was required to

---

[1] "(A) Subject to divisions (B)(1), (2), and (3) of this section, sections 2315.32 to 2315.36 of the Revised Code apply to a product liability claim that is asserted pursuant to sections 2307.71 to 2307.80 of the Revised Code.

(B)(1) Express or implied assumption of the risk may be asserted as an affirmative defense to a product liability claim under sections 2307.71 to 2307.80 of the Revised Code, except that express or implied assumption of the risk may not be asserted as an affirmative defense to an intentional tort claim.

(2) Subject to division (B)(3) of this section, if express or implied assumption of the risk is asserted as an affirmative defense to a product liability claim under sections 2307.71 to 2307.80 of the Revised Code and if it is determined that the claimant expressly or impliedly assumed a risk and that the express or implied assumption of the risk was a direct and proximate cause of harm for which the claimant seeks to recover damages, the express or implied assumption of the risk is a complete bar to the recovery of those damages."

4

make the repair while the machine was running. Accordingly, the Court's inquiry focuses on this exception.

The defense of assumption of the risk is subject to an exception where the injured party encounters the risk as part of his or her employment. In *Carrel v. Allied Prods. Corp.*, 78 Ohio St. 3d 284 (1997), the Ohio Supreme Court held: "An employee will be deemed to have voluntarily exposed himself or herself to a risk when he or she has elected to use a defective product. However, the defense of assumption of the risk is not available when the employee is required to encounter the risk while performing normal job duties." *Id.* at 290. The Court notes from the outset that this doctrine applies even where the manufacturer, not the employer, has been sued. Indeed, in the seminal *Carrel* case, defendant was the product manufacturer. *See also Wade v. Diamant Boart, Inc.*, No. 3:01 CV 7229, 2007 WL 1362780 (N.D. Ohio May 8, 2007) (applying this doctrine in lawsuit against manufacturer).

Accordingly, the key dispute is whether Plaintiff was compelled as part of his employment to "encounter the risk" inherent in placing the end of his screwdriver in the machine to remove melted plastic. Plaintiff claims his observation of other employees using the same method to clear plastic and the production demands made the risk unavoidable. This claim is unsupported. Plaintiff cannot point to any instruction or policy of clearing the plastic in that manner, and indeed he acknowledges that Campbell's maintenance policy requires shutting down the machine.

Plaintiff cites to *Blevins v. Doe*, 279 F. Supp. 2d 922 (N.D. Ohio 2003), but that case is clearly distinguishable. In *Blevins*, the court denied the employer's summary judgment motion based on assumption of the risk, finding a dispute of material fact existed. Plaintiff was hurt after falling from a scaffolding from which the guards had been removed by other employees. The court reasoned that

5

plaintiff did not voluntarily put himself in this risky situation but instead was "exposed to the associated risk of injury as part of his regular employment duties." *Id.* at 927. Plaintiff was required to work on the scaffolding and did not voluntarily choose to remove or ignore vital safety precautions.

*Blevins* stands in stark contrast to the instant case because of the lack of instruction or compulsion to encounter the risk. Safety procedures and precautions were in place for maintaining the ARPAC machine. More analogous cases demonstrate summary judgment is appropriate. In *Knopp v. Dayton Machine Tool, Co.*, 2004-Ohio-6817 (Ohio Ct. App.), the court upheld a grant of summary judgment for defendant where plaintiff was under no compulsion to clean a machine, while it was still running, which caused him injury. The court found the employer's instruction to plaintiff to "sweep up" was not an order to clean the machine while it was running. *Id.* at ¶ 3. The plaintiff took it upon himself to examine and clean part of the machine, and the company had warned employees during training not to touch moving parts. *Id.* at ¶ 35. Plaintiff also ignored a sign on the machine warning users to "Keep Your Hands Clear." *Id.* The general instruction to avoid moving parts and the presence of a clear warning on the machine closely track the facts in the instant case.

Similarly, in *Carnes*, 2007-Ohio-2350, at ¶ 84 the court upheld a grant of summary judgment where plaintiff admitted in statements to Occupational Safety and Health Administration (OSHA) that he could have performed maintenance on the conveyor belt in a safer manner and that the accident was a "complete oversight" on his part. *Id.* Plaintiff was injured when he came into contact with the underside of a moving conveyor belt while performing maintenance, and admitted he could have performed maintenance safely without going underneath the belt ("I shouldn't have approached it the way I did.") *Id. Carnes* is strikingly similar to the instant case, where Plaintiff similarly admitted he

should have shut down the machine before attempting to clear the plastic buildup ("Q: You should have locked out?  A: At least shut it off.") (Vold Dep. 131).  *See also* Vold Dep. 168-69.

Plaintiff points to no evidence of being compelled or instructed to act in the way he did. Indeed, Defendant points to product documentation warning against placing hands in the machinery while it is running and instructing users to at least turn off the cycle mode while clearing jams in the tunnel.  The safety manual for the machine suggests using a "wooden apparatus" to clear jams and that jams should be cleared when not in the "cycle mode" (Doc. No. 24, Ex. B).  The manual also instructs users not to reach into the machine to clear jams and specifically instructs users not to "pick stuck film off a moving tunnel belt."  Plaintiff admits he was aware the belt was moving when he attempted to remove the plastic buildup, a direct violation of this specific instruction.

Furthermore, Plaintiff's argument that he was pressured due to production and time demands is undercut by the simple fact the machine was **not** running product at the time of his attempted fix.

Plaintiff next points to a time when he was "chewed out" by a supervisor, Marcus Leone, for locking out a piece of equipment to perform maintenance on another occasion.  He claims this supports his argument that he was compelled to clear the plastic in the manner he chose (Vold Dep. 51). However, when asked to illustrate what he meant by "chewed out," Plaintiff offered: "Hurry up, let's go, let's get this piece of equipment running." (Vold Dep. 53).   Leone urged Plaintiff to work quickly but **not** to ignore safety measures and he was never "written up" or otherwise disciplined for this verbal "hurry up" (Vold Dep. 53-54).  When asked whether he would continue to "lock out what you think was necessary, even despite" that specific instance, Plaintiff answered "Yes" (Vold Dep. 57).

7

Although Plaintiff states he saw other employees remove plastic buildup from the machine in the same manner, observing others engaging in this risky behavior does not amount to an instruction or compulsion by his employer to do so. The Court is reminded of the old adage: "If you see someone jump off a cliff, will you follow?" Significantly, Plaintiff cites no evidence showing management encouraged, condoned, or even knew of this behavior. Unlike the employee working on the unguarded scaffold in *Blevins*, Plaintiff controlled the manner in which he approached the task of clearing the buildup. Drawing all inferences from this testimony in Plaintiff's favor, the Court concludes there is no evidence of compulsion to encounter the risk in the manner he did.

Finally, Plaintiff cites the expert testimony of Byron Reed, an engineer in the areas of Mechanical and Chemical Engineering, Food Processing and Packaging. Plaintiff represents Reed's expertise lies in design, fabrication, repair, troubleshooting and modification process and packaging machinery similar to the ARPAC machine. Reed testified by affidavit that: (1) Defendant unnecessarily exposed Plaintiff to the hazard of a moving conveyor belt at high temperatures; (2) the machine did not have adequate guards compared to industry standards; (3) the machine did not conform to generally accepted practices and standards of care and design because it lacked adequate guards and emergency stop mechanism; (4) Defendant knew or should have known the lack of guarding would expose users to danger when cleaning a moving belt; and (5) it was reasonably foreseeable that a concerned employee would attempt to clear any buildups quickly, which could entail using a tool such as a screwdriver handle.

Defendant disputes the probative value and admissibility of this evidence, arguing Reed's testimony regarding generally accepted practices and standards conflicts with Department of Labor and OSHA standards. Reed's testimony, even if fully credited, does not bear on the dispositive issue

8

of assumption of risk. Considered in the light most favorable to Plaintiff, Reed's testimony might assist in establishing Plaintiff's *prima facie* claim for products liability, but these conclusions are not relevant to whether Plaintiff "expressly or impliedly assumed a risk [which] was a direct and proximate cause of harm for which the claimant seeks to recover damages." Ohio Revised Code § 2307.711. More specifically, Reed's testimony does not establish that Plaintiff was instructed or compelled, explicitly or tacitly, to encounter the risk in the precise manner he did.

Defendant has established there is no genuine dispute that it is entitled to the affirmative defense of assumption of the risk. Plaintiff voluntarily exposed himself to this risk. Because this defense bars all product liability claims, those claims are dismissed.

## II.     Intentional Tort

Plaintiff correctly observes assumption of the risk is unavailable as a defense to intentional tort claims pursuant to Ohio Revised Code § 2307.711 and accordingly argues the facts establish a viable intentional tort claim against Defendant.

Plaintiff does not specify the nature of this claim, but the Court infers Plaintiff is analogizing this situation to the doctrine of employer intentional torts, as there is clearly no evidence of a traditional intentional tort. Under the employer intentional tort theory, a plaintiff must show: "(a) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment [to such danger], then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Fyffe v. Jeno's Inc.*, 59 Ohio St. 3d 115, 115 (1991). Although *Fyffe* was superseded by Ohio Revised Code § 2745.01, that provision

9

has been held unconstitutional. Ohio courts now look to *Fyffe* for the elements of the claim. *Kaminski v. Metal & Wire Prods. Co.*, 175 Ohio App. 3d 227, 239 (Ohio Ct. App. 2008).

Plaintiff cites no legal authority to suggest a manufacturer could be liable for an employer intentional tort in this scenario. In the absence of any legal analysis by Plaintiff, the Court assumes Plaintiff is seeking application of this doctrine. However, the Court finds no authority for applying this claim to a manufacturer. Furthermore, even assuming such a claim may be asserted, Plaintiff provides insufficient factual evidence.

Reed's expert testimony that "ARPAC knew or should have known that the area of the returning belt was accessible, that the belt would require cleaning, and that the employees would attempt to clean the belt, in spite of instructions" (Reed Aff. ¶ 13), is akin to saying it should know someone like Plaintiff would ignore its safety efforts. His affidavit that similar equipment produced by other manufacturers contained guards and limited access to the underside of the belt does not mean Defendant can be held liable for "plac[ing] into the stream of commerce a product which it knew or should have known was inherently dangerous and likely to cause injuries when used in its foreseeable purpose" ( Response at pp. 13-14). This testimony might support a claim of negligence, but not an intentional tort. This testimony does not establish knowledge of a "substantial certainty" of harm to Plaintiff, and most certainly does not establish that Defendant required Plaintiff to use the machine in the manner he did. In short, even if an intentional tort claim of this kind could be advanced against a manufacturer, a dubious proposition, Plaintiff provides no evidence to meet the elements of such a claim.

10

## CONCLUSION

For the foregoing reasons, Defendant's Motion is granted and the case is dismissed.

IT IS SO ORDERED.

                                                     s/ *Jack Zouhary*
                                            JACK ZOUHARY
                                            U. S. DISTRICT JUDGE

                                            July 17, 2008